UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SUSAN NUGENT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0065** |
| **AETNA LIFE INSURANCE COMPANY** | **SECTION "B"(5)** |

### ORDER AND REASONS

Before the Court are Plaintiff, Susan Nugent's ("Nugent"), and Defendant, Aetna Life Insurance Company's ("Aetna"), Cross-Motions for Summary Judgment. (Rec. Doc. Nos. 43 & 44). In response, each party submitted a Memorandum in Opposition to the other party's Motion for Summary Judgment. (Rec. Doc. Nos. 46 & 47). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that Aetna's Motion for Summary Judgment is **GRANTED** and Nugent's claim is **DISMISSED**. Nugent's Motion for Summary Judgment is **DENIED**.[1]

### PROCEDURAL AND FACTUAL HISTORY

Nugent was employed as a bookkeeper by Total Safety USA, Inc. and pursuant to her employment purchased a policy of long-term disability insurance with the defendant, Aetna. (Rec. Doc. No. 43-1 at 1; Rec. Doc. No. 44-1 at 2). After purchasing this policy, Nugent was diagnosed with colorectal cancer for

---

[1] We are grateful for the work on this case by Matt S. Landry, a Tulane University Law School extern with our Chambers.

which she received chemotherapy treatment until October 2009. (Rec. Doc. No. 44-1 at 2). Nugent filed a claim for long-term disability benefits with Aetna based upon colorectal cancer and residual effects of the disease and surgery, *id.,* including neuropathy, *See* (Rec. Doc. No. 44-1 at 3). Benefits were initially approved on April 30, 2009. (Rec. Doc. No. 43-1 at 1; Rec. Doc. No. 44-1 at 2).

Some time afterwards, Aetna encouraged Nugent to apply for disability insurance benefits with the Social Security Administration, and provided counsel to assist her in doing so. (Rec. Doc. No. 43-1 at 1). On February 19, 2010, the Social Security Administration ("SSA") determined Nugent to be disabled, because a vocational expert testified that there are no jobs in the national economy that Nugent could perform. (Rec. Doc. No. 44-1 at 4; Rec. Doc. No. 44-2 at 5). As a result, Aetna received a credit for those benefits it paid Nugent. (Rec. Doc. No. 43-1 at 1).

On October 6, 2009, Nugent's oncologist, Dr. Satti, discontinued Nugent's chemotherapy. (Rec. Doc. No. 44-2 at 5). In December 2009 and March 2010, PET scans confirmed that Nugent's cancer was in remission. (Rec. Doc. No. 44-1 at 3).

On February 8, 2011, Nugent reported to Aetna that she still

could not work.[2] (Rec. Doc. No. 44-2 at 8-9).

Nonetheless, on May 10, 2011, Aetna notified Nugent that her long-term disability ("LTD") benefits would be terminated effective May 9, 2011, (Rec. Doc. No. 44-1 at 4), reasoning that she was no longer disabled as defined in her plan, as evidenced by medical records of Nugent's condition after Nugent was awarded disability by the SSA. (Rec. Doc. No. 43-1 at 1; Rec. Doc. No. 44-2 at 11; Rec. Doc. No. 46 at 3). Aetna concluded that Nugent was no longer disabled under its policy because medical records no longer contained evidence of functional impairment that would preclude Nugent from performing her occupation as a bookkeeper. (Rec. Doc. No. 44-1 at 3).

Nugent appealed Aetna's denial on June 21, 2011. (Rec. Doc. No. 44-1 at 4). Aetna upheld the termination of benefits on December 8, 2011, reasoning that medical evidence did not support Nugent's claimed inability to perform her bookkeeper occupation. *Id.*

Nugent filed suit against Aetna in this Court on January 10, 2012. *Id.* After Nugent's counsel discovered that a technical glitch resulted in the failure to submit the full SSA decision to

---

[2] Nugent claimed that she had severe neuropathy in her legs, that she was never without pain, does not have control of her bowels and cannot go far from her house for that reason, has pain with walking or sitting too long, and did not think she could ever return to work and could not do her job due to her problems with sitting and standing and being in the bathroom all the time. (Rec. Doc. No. 44-2 at 8-9).

3

Aetna, the parties agreed to resubmit the claim to Aetna. *Id.* Upon review, Aetna upheld its termination of Nugent's disability benefits on November 5, 2012, and the case came back to this Court. *Id.* Advising the Court that no general issues of material fact remain, the parties agreed to submit the instant motions for summary judgment to resolve the case. (Rec. Doc. No. 41 at 1).

## LAW AND ANALYSIS

**I. Standard of Review**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

A deferential standard of review is appropriate for an Employee Retired Income Security Act of 1974 ("ERISA") claim appealing denial of plan benefits if the ERISA plan "grant[s] 'the administrator or fiduciary discretionary authority to determine eligibility for benefits.'" *Metropolitan Life Insurance Company v. Glenn,* 554 U.S. 105, 111 (2008) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *Schexnayder v. Hartford Life and Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010)(citing *Wade v. Hewlett-Packard Dev. Co. LP Short Term*

4

*Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007))

Under a deferential standard of review, a plan administrator's decision will be upheld if it "is supported by substantial evidence[3] and is not arbitrary and capricious." *Schexnayder*, 600 F.3d at 468 (citing *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)). "The court's 'review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness-even if on the low end.'" *Holland v. International Paper Co. Retirement Plan,* 576 F.3d 240, 246 (5th Cir. 2009) (citing *Corry v. Liberty Life Assurance Co. of Boston,* 499 F.3d 389, 398 (5th Cir. 2007).

**II. Plan Administrator's Denial of an LTD Award**

To determine whether a plan administrator's decision to deny disability benefits is arbitrary and capricious or reasonable and supported by substantial evidence, the Fifth Circuit conducts a balancing analysis which examines multiple factors, including medical evidence, structural conflicts of interest, and the SSA's award. *See Schexnayder*, 600 F.3d at 469-71.

---

[3] Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis*, 394 F.3d at 273 (quoting *Deters v. Secretary of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))).

### A. Medical Evidence

The Supreme Court has held that in reviewing medical evidence, plan administrators need not "accord special weight to the opinions of a claimant's physician"; however, <u>a plan administrator may not arbitrarily refuse to include the opinions of treating physicians</u>. *Schexnayder*, 600 F.3d at 469 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003))(emphasis added). If reliable medical evidence contradicts a plaintiff's treating physician's opinions, plan administrators are "not required to give special deference to the treating physicians," as long all evidence submitted by the plaintiff is taken into account. *Hamilton v. Stand. Ins. Co.* No. 08B1717, 2010 WL 686399 (W.D. Louisiana February 23, 2010) (citing *Nord*, 538 U.S. 822(2003); *Love v. Dell, Inc.*, 551 F.3d 333 (5th Cir. 2008)); *aff'd by Hamilton v. Stand. Ins. Co.* 404 Fed. Appx. 895, 898 (5th Cir. 2010). For example, in *Hamilton v. Stand. Ins. Co.*, the court held that a plan administrator's decision to deny disability benefits was not arbitrary and capricious when it based its decision on the fact that four of its consulting physicians opined that the records did not support a diagnosis of fibromyalgia, in contrast to two out of plaintiff's three treating physicians' opinions that she was suffering from fibromyalgia. *Hamilton,* 404 Fed. Appx. at 896-898.

Here, Aetna's decision was supported by substantial medical evidence. Prior to the SSA's February 2010 decision to award Nugent disability benefits, Nugent had multiple normal neurological examinations, but one of her treating physicians stated that Nugent "had no ability to work until sometime after her surgery scheduled for April 4, 2009" (Rec. Doc. No. 44-2 at 3-5). Between February 2010 and when Aetna made its determination in May 2011, Nugent saw several doctors who reported normal neurological examinations. *See* (Rec. Doc. No. 44-2 at 6-13). Six treating physicians opined about Nugent's neuropathy, *See* (Rec. Doc. No. 44-1 at 6-7; Rec. Doc. No. 44-2 at 3-16). Aetna's peer medical reviews, which determined that Nugent could return to work, only conflicted with two of these physicians' opinions, *See* (Rec. Doc. No. 44-1 at 6-7; Rec. Doc. No. 44-2 at 9-13). One of these physicians declared that his opinion that Nugent could not perform her job was outside his "area of knowledge." (Rec. Doc. No. 44-2 at 9-13). The other merely stated that he suspected it would be difficult for Nugent to return to work, based on a normal neurological evaluation. *Id.* at 10. Because plan administrators are permitted to disagree with a plaintiff's treating physicians, *see Hamilton,* 404 Fed. Appx. at 898, and Aetna only disagreed with one of several treating physician's suspicion that Nugent could go to work, *see* (Rec. Doc. No. 44-1

7

at 6-7; Rec. Doc. No. 44-2 at 10), Aetna's conclusion about Nugent's ability to return to work was based on substantial medical evidence.

**B. Conflict of Interest**

The Supreme Court has held that conflicts of interest should be weighed in determining whether a plan administrator's decision is arbitrary and capricious. *Schexnayder,* 600 F.3d at 470 (citing *Metropolitan Life Insurance Company v. Glenn,* 554 U.S. 105, 115 (2008)). A conflict of interest occurs when an entity that administers an employee benefit plan "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Glenn,* 554 U.S. at 108. This includes insurance companies. *Id.* at 114-15.

A conflict of interest's significance relative to other factors "depend[s] upon the circumstances of the particular case." *Glenn* 554 U.S. at 108 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also Holland v. International Paper Co. Retirement Plan,* 576 F.3d 240, 247 (2009) ("[T]he specific facts of the conflict will dictate its importance.") For example, a conflict of interest

> should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. (Omitted citation) It should prove less

8

> important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy.

*Metropolitan,* 554 U.S. at 117. A conflict of interest should be given more weight if the plan administrator evidences "procedural unreasonableness." *See Schexnayder*, 600 F.3d at 471 (citing *Glenn*, 554 U.S. at 118). One way in which a plan administrator demonstrates procedural unreasonableness is by failing to address a contrary SSA award. *Id. (*citing *Glenn*, 554 U.S. at 118). Indeed, failure to address an SSA award of disability suggests financial bias may have affected a plan administrator's decision. *See id.*

A conflict of interest exists in this case because Aetna both determined whether Nugent was eligible for benefits and paid her benefits. *See Glenn,* 554 U.S. at 108, 114-15. However, the only claim made by either party as to whether this conflict of interest should be given more or less weight is Nugent's claims that Aetna made its decision in a "procedurally unreasonable" manner by insufficiently considering the SSA's award. *See* (Rec. Doc. 43-1 at 8). Because Aetna sufficiently considered the SSA's award, as discussed below, *see infra*, no facts in this case indicate that Aetna's conflict of interest should be given more, rather than less, weight.

9

**C. SSA Award**

In addition to exacerbating or alleviating a conflict of interest factor, failure to address an SSA award is "a factor in its own right," and should therefore be considered as a third factor, in addition to medical evidence and conflicts of interest. *Schexnayder*, 600 F.3d at 471.  Nevertheless, this factor will only "tip the balance" for "borderline cases." *Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444, 450 (7th Cir. 2009)(citing *Glenn*, 554 U.S. at 117).

Although a plan administrator should consider an SSA determination, it is not required to concur "because the eligibility criteria for SSA disability benefits differs from that of ERISA plans." *Hamilton v. Stand. Ins. Co.*, 404 Fed. Appx. 895, 898 (5th Cir. 2010)(citing *Schexnayder,* 600 F.3d at 471 n. 3 (5th Cir. 2010)). *But see Raybourne v. CIGNA Life Insurance Company of New York*, 700 F.3d 1076, 1083, 1085 (7th Cir. 2012)(declaring "functionally equivalent" the SSA's definition of disability and the definition, "he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified").

Nugent points to *Schexnayder* to support the proposition that failure to "really consider the rationale or make any meaningful distinction between its decision and that of the Social Security

Administration" amounts to "procedural unreasonableness." *See* (Rec. Doc. No. 43-1 at 5). Although the *Schexnayder* Court held that a claim administrator made a decision in a procedurally unreasonable manner, the claim administrator in that case failed to consider the SSA award entirely. *See Schexnayder,* 600 F.3d at 471 (explaining that "Hartford did not address the SSA award in any of its denial letters"). Unlike the claim administrator in *Schexnayder*, Aetna considered the SSA award. *See* (Rec. Doc. 42-1 at 10-13). In a November 5, 2012 letter to Nugent, Aetna explained that it denied Nugent's disability benefits, because (1) the SSA and Aetna's definitions differ in that a higher degree of disability is required to meet Aetna's threshold ; and (2) Aetna considered Nugent's ability to return to work over one year later than the SSA, much further removed from when Nugent's chemotherapy concluded. *See id.* Because Aetna considered the SSA award, *Schexnayder* does not support Nugent's claim that Aetna's decision was procedurally unreasonable.[4]

Nugent also points to a recent Seventh Circuit case, *Raybourne v. CIGNA Life Insurance Company of New York*, 700 F.3d

---

[4] To support its assertion that Aetna insufficiently considered the SSA's award, Nugent points to another case, *Moller v. El Campo Aluminum Company*, 973 F.3d 85 (5th Cir. 1996), in which the court reversed because a decision-maker failed to consider an SSA award. (Rec. Doc. No. 43-1 at 5). However, in *Moller*, like in *Schexnayder*, and unlike Aetna in the instant matter, (Rec. Doc. 42-1 at 10-13), the decision-maker completely neglected a contrary SSA award, *See Moller,* 973 F.3d at 87-89 .

1076 (7th Cir. 2012), to support its claim that Aetna insufficiently considered SSA's award by dismissing the similarity of SSA and Aetna's definition of disability requirements. *See* (Rec. Doc. No. 43-1 at 2-4). Although the Fifth Circuit has held that "the eligibility criteria for SSA disability benefits differs from that of ERISA plans," *Hamilton v. Stand. Ins. Co.*, 404 Fed. Appx. 895, 898 (2010)(citing *Schexnayder*, 600 F.3d at 471, n. 3), the Seventh Circuit, in *Raybourne*, held that "the definitions are functionally equivalent," *Raybourne*, 700 F.3d at 1085. Nevertheless, Aetna's decision to treat the definitions as different is not arbitrary, because a rational administrator could find that the definitions had different meaning, not only because of their textual dissimilarity, *see* (Rec. Doc. No. 43-2 at 1), but also because the Fifth Circuit has held they are different, *Hamilton*, 404 Fed. Appx. at 898 (citing *Schexnayder,* 600 F.3d at 471 n. 3). Thus, Aetna's decision to deny Nugent disability benefits was not procedurally unreasonable.

Balancing these three factors: (1) medical evidence; (2) the relatively slight weight given to Aetna's conflict of interests; and (3) sufficient consideration of the SSA's award; Aetna's decision was rational, and supported by substantial evidence, as the latter term is legally defined. While contrary medical

evidence makes Aetna's denial of benefits debatable, in the Court's opinion, it does not thereby show the decision to be arbitrary and capricious.

New Orleans, Louisiana, this 16th day of July, 2013.

_____
UNITED STATES DISTRICT JUDGE